**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH TWITTER IDENTIFIERS 1073859727107469312 AND/OR @EXPOSEFASCISM31; AND/OR THEREVOLUTIONRENEGADE@GMAIL.COM; AND/OR REVOLUTIONRENEGADEPHILLY@GMAIL.COM; AND/OR REVOLUTIONARYABOLITION.PHILLY@RISEUP.NET; THAT IS STORED AT PREMISES CONTROLLED BY TWITTER | Case No. ~~3:19mj00060~~ **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, David Wolf, being first duly sworn, hereby depose and state as follows:

Your affiant, David Wolf, a Special Agent assigned to the Federal Bureau of Investigation (FBI), United States Department of Justice, being duly sworn, states the following to wit:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Twitter account that is stored at premises owned, maintained, controlled, or operated by Twitter, a social-networking company headquartered in San Francisco, CA. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Twitter to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the Twitter account.

2.      I am a Special Agent (SA) with the FBI and have been so employed since 2013 and am currently assigned to the Richmond Division.  In connection with my official FBI duties, I

investigate criminal violations relating to domestic and international terrorism.  I have received specialized training and have been involved in all aspects of terrorism investigations, including (a) the debriefing and interviews of defendants, witnesses, and victims; (b) surveillance; and (c) analysis of documentary and physical evidence; (d) interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures.

3.     Your affiant bases this affidavit upon my training and experience, personal knowledge and observations made during the course of this investigation, and upon my personal review of records, documents, and items lawfully obtained by third parties, public records, and interviews, and information obtained from other agents and witnesses. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part.  The affiant is familiar with the information contained in this affidavit based upon the investigation I have conducted to date and based on my conversations with other law enforcement officers who have been involved in this investigation, some of whom have also been involved in numerous investigations relating to the events of August 11th and 12th, 2017 in Charlottesville, Virginia.  Because this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included each and every fact I know about the investigation.

**RELEVANT STATUTE**

4.     Title 18, United States Code, § 2101(a), provides that "Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent 1) to incite a riot; or 2)

to organize, promote, encourage, participate in, or carry on a riot; or 3) to commit any act of violence in furtherance of a riot; or 4) to aid or abet any person in inciting or participating in  or carrying on a riot or committing any act of violence in furtherance of a riot and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act" for these purposes shall be guilty of a federal offense.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2101 have been committed by ███████████████████. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## **BACKGROUND**

6.      On August 12, 2017, a "Unite the Right" rally (UTR) was scheduled to occur at Emancipation Park in Charlottesville, Virginia, which is within the Western District of Virginia. The proclaimed purpose of the rally was to protest the removal of the Robert E. Lee and Thomas "Stonewall" Jackson statues in Charlottesville.  Several groups and individuals espousing right-wing nationalist and/or white supremacist views traveled to Charlottesville to attend the rally in support.   The UTR rally was scheduled to begin at noon.  That morning, individuals and groups espousing white supremacist and white nationalist beliefs funneled into Emancipation Park. Numerous counter-protestors attended the rally to oppose the rally and its supporters.  Throughout the morning, numerous violent encounters occurred between protestors and counter-protestors. Before the UTR rally could officially begin, law enforcement declared an unlawful assembly and cleared Emancipation Park.

3

## PROBABLE CAUSE

7.      The FBI received information that ████ had traveled in interstate commerce – from Philadelphia, PA to Charlottesville, Virginia – with the intent to engage in acts of violence in furtherance of a riot, and thereafter, did commit such acts of violence on August 12, 2017, in Charlottesville, Virginia.  Following receipt of this information, the FBI initiated an investigation into possible violations of federal criminal law.

8.      On August 12, 2017, in Charlottesville, Virginia, ████ committed multiple acts of violence against rally attendees, which in some cases resulted in physical injury.   The aforementioned information was corroborated by a video posted to an Instagram account, located at the following URL:   https://www.instagram.com/p/BXumQv1gAk7/?hl=en&taken-by=streetbeefs.  In the video, ████ can be seen wielding an ASP collapsible baton and hitting at least two individuals in the vicinity of Court Square Park, located in Charlottesville, Virginia.

9.      In the following screen shot from the video, ████ is about to strike an indivdual wearing a gray t-shirt in the head with the baton.  The individual is facing in the other direction, with his back turned to ████, and seems to be unaware of the impending attack.  ████ is wearing black pants, a black sleeveless top, and she has blond hair and tattoos on her left upper arm, consistent with identifiable tattoos in other known photographs of her obtained in the investigation.  She is also carrying a backpack on her back.  The ASP baton can be seen in her right hand, in a raised position.   A subsequent screen shot from the same video shows the moment ████ raises the baton high above her head in the act of hitting the man in the head.  Visible also are the fingers of her left hand as she places them on the upper left arm of the man while

4

bracing herself for the strike.  The next screen shot shows the moment [REDACTED] hits the man with the baton.  The man appears to react to the assault by raising his arms.

 



10.    An additional video of the same incident was posted to the Twitter page of the Virginia      chapter      of      the      ACLU      at      the      following      URL: https://twitter.com/acluva/status/896410932355751937.  In the following screen shot, [REDACTED] can be seen raising the baton above her head in preparation for hitting Victim #1:

5



11.     During the investigation, your Affiant has learned the identity of the individual and hereinafter he will be referred to as Victim #1.  As a result of being struck by ████ baton, Victim #1 sustained a larceration to the head, causing blood to drip down his face.

12.     After attacking Victim #1, ████ then immediately proceeded to a second physical altercation, which occurred after a counter-protestor attempted to steal an American flag from a protestor and the two began to fight and fall to the ground.  After at least two additional people joined in, ████ can be seen on video running over and striking one of the individuals involved in the altercation at least once with her baton, as captured on video and evidenced in the screen grab below:



13.    The individual who ▮▮▮▮ struck subsequently took a photograph of his injuries,

which depicted a substantial bruise to his arm as a result of being struck with the baton.

14.     A  search  warrant  was  served  on  Facebook,  Inc.  for  records  associated  with  a Facebook  account  attributed  to  ██████.     Your  affiant  has  reviewed  those  records,  including instant messages ██████ both sent and received.

15.     Additionally,  the  same  Facebook  search  warrant  return  revealed  that "therevolutionrenegade@gmail.com"     and     '██████████████████████'     were     two registered email addresses for ██████' Facebook account.

16.     In a Facebook IM exchange with an individual who identifies as ██████████ on 9/1/17, she provides her email account:



**Author** ██████████ (100000469097946)
**Sent** 2017-09-01 13:18:26 UTC
**Body** ████████████████

**Author** ██████████ (100009010788294)
**Sent** 2017-09-01 13:18:15 UTC
**Body** what shop?

**Author** ██████████ (100000469097946)
**Sent** 2017-09-01 13:18:13 UTC
**Body** Did you want to have Conrad order stuff to the house?

**Author** ██████████ (100009010788294)
**Sent** 2017-09-01 13:18:08 UTC
**Body** need you email address

17.     Legal process was served on Amazon.com for records associated with user email address ██████████████ for the Amazon account used by ██████.  Your affiant has reviewed the records and learned that on April 30, 2015, ██████ purchased the following:

ACK, LLC Police Magnum Faux Leather Holster Pepper Spray with UV Dye and Twist Top

VIPERTEK VTS-979-51,000,000 V Stun Gun - Rechargeable with Safety Disable Pin LED Flashlight (Black)

Bundle X2 Items: [21 Inch Extendable Baton w/ case] + [CIA Letter-Opener]

As indicated by the records provided by Amazon, ███████ has previously purchased a 21" inch

extendable baton with a case.

      18.    Law enforcement open source searches revealed that email address,

"therevolutionrenegade@gmail.com" likely was associated with Twitter numeric ID

"1073859727107469312" and Twitter username "@exposefascism31".

      19.    Legal process served to Google also revealed that

"therevolutionrenegade@gmail.com" utilized a recovery email address of

"revolutionrenegadephilly@gmail.com".  Law enforcement believes that the latter email address

was also utilized by ███████

      20.    A review of ███████ Facebook return revealed a message thread with another

individual in which ███████ states she can be reached at

"revolutionaryabolition.philly@riseup.net" as seen below:

| | |
|---|---|
| **Author** | ███████ (100000469097946) |
| **Sent** | 2017-08-09 10:06:38 UTC |
| **Body** | please shoot me a text!!!! or write me back on here or revolutionaryabolition.philly@riseup.net |
| **Author** | ███████ (100000469097946) |
| **Sent** | 2017-08-09 10:06:07 UTC |
| **Body** | Give me a shout @ 267-701-1095 BY THE WAY THIS IS LINDSEY BIRD One of my friends thought it was cute to change my name on here LOL |
| **Author** | ███████ (100000469097946) |
| **Sent** | 2017-08-09 10:05:36 UTC |
| **Body** | We need some entertainment for a fundraiser in south philly (at a house venue) on 8?26, a private antifascist anticap party on 9/9, a grand opening party on 10/1 (or whatever that weekend is) and some events here and there 10/21-25. |
| **Author** | ███████ (100000469097946) |
| **Sent** | 2017-08-09 10:04:11 UTC |
| **IP** | 2601:4a:c200:41a2:19c8:fefd:c2e3:7186 |
| **Body** | Hey you lovely amazing woman I havent seen in way too long!!!! I am opening a Revolutionary Abolitionist Movement Base here in philly www.revolutionaryabolition.org |

## INFORMATION REGARDING TWITTER

21.     Twitter owns and operates a free-access social-networking website of the same name that can be accessed at http://www.twitter.com. Twitter allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and location information. Twitter also permits users to create and read 140-character messages called "Tweets," and to restrict their "Tweets" to individuals whom they approve. These features are described in more detail below.

22.     Upon creating a Twitter account, a Twitter user must create a unique Twitter username and an account password, and the user may also select a different name of 20 characters or fewer to identify his or her Twitter account. The Twitter user may also change this username, password, and name without having to open a new Twitter account.

23.     Twitter asks users to provide basic identity and contact information, either during the registration process or thereafter. This information may include the user's full name, e-mail addresses, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers. For each user, Twitter may retain information about the date and time at which the user's profile was created, the date and time at which the account was created, and the Internet Protocol ("IP") address at the time of sign-up. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access a given Twitter account.

24.     A Twitter user can post a personal photograph or image (also known as an "avatar") to his or her profile, and can also change the profile background or theme for his or her account page. In addition, Twitter users can post "bios" of 160 characters or fewer to their profile pages.

25. Twitter also keeps IP logs for each user. These logs contain information about the user's logins to Twitter including, for each access, the IP address assigned to the user and the date stamp at the time the user accessed his or her profile.

26. As discussed above, Twitter users can use their Twitter accounts to post "Tweets" of 140 characters or fewer. Each Tweet includes a timestamp that displays when the Tweet was posted to Twitter. Twitter users can also "favorite," "retweet," or reply to the Tweets of other users. In addition, when a Tweet includes a Twitter username, often preceded by the @ sign, Twitter designates that Tweet a "mention" of the identified user. In the "Connect" tab for each account, Twitter provides the user with a list of other users who have "favorited" or "retweeted" the user's own Tweets, as well as a list of all Tweets that include the user's username (*i.e.*, a list of all "mentions" and "replies" for that username).

27. Twitter users can include photographs or images in their Tweets. Each Twitter account also is provided a user gallery that includes images that the user has shared on Twitter, including images uploaded by other services.

28. Twitter users can also opt to include location data in their Tweets, which will reveal the users' locations at the time they post each Tweet. This "Tweet With Location" function is off by default, so Twitter users must opt in to the service. In addition, Twitter users may delete their past location data.

29. When Twitter users want to post a Tweet that includes a link to a website, they can use Twitter's link service, which converts the longer website link into a shortened link that begins with http://t.co. This link service measures how many times a link has been clicked.

30. A Twitter user can "follow" other Twitter users, which means subscribing to those users' Tweets and site updates. Each user profile page includes a list of the people who are

following that user (*i.e.*, the user's "followers" list) and a list of people whom that user follows (*i.e.*, the user's "following" list). Twitters users can "unfollow" users whom they previously followed, and they can also adjust the privacy settings for their profile so that their Tweets are visible only to the people whom they approve, rather than to the public (which is the default setting). A Twitter user can also group other Twitter users into "lists" that display on the right side of the user's home page on Twitter. Twitter also provides users with a list of "Who to Follow," which includes a few recommendations of Twitter accounts that the user may find interesting, based on the types of accounts that the user is already following and who those people follow.

31.     In addition to posting Tweets, a Twitter user can also send Direct Messages (DMs) to one of his or her followers. These messages are typically visible only to the sender and the recipient, and both the sender and the recipient have the power to delete the message from the inboxes of both users. As of January 2012, Twitter displayed only the last 100 DMs for a particular user, but older DMs are stored on Twitter's database.

32.     Twitter users can configure the settings for their Twitter accounts in numerous ways. For example, a Twitter user can configure his or her Twitter account to send updates to the user's mobile phone, and the user can also set up a "sleep time" during which Twitter updates will not be sent to the user's phone.

33.     Twitter includes a search function that enables its users to search all public Tweets for keywords, usernames, or subject, among other things. A Twitter user may save up to 25 past searches.

34.     Twitter users can connect their Twitter accounts to third-party websites and applications, which may grant these websites and applications access to the users' public Twitter profiles.

35.     If a Twitter user does not want to interact with another user on Twitter, the first user can "block" the second user from following his or her account.

36.     In some cases, Twitter users may communicate directly with Twitter about issues relating to their account, such as technical problems or complaints. Social-networking providers like Twitter typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. Twitter may also suspend a particular user for breaching Twitter's terms of service, during which time the Twitter user will be prevented from using Twitter's services.

37.     As explained herein, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Twitter user's account information, IP log, stored electronic communications, and other data retained by Twitter, can indicate who has used or controlled the Twitter account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, communications, "tweets" (status updates) and "tweeted" photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Twitter account at a relevant time.  Further, Twitter account activity can show how and when the account was accessed or

13

used.  For example, as described herein, Twitter logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation.  Additionally, Twitter builds geo-location into some of its services.  If enabled by the user, physical location is automatically added to "tweeted" communications.  This geographic and timeline information may tend to either inculpate or exculpate the Twitter account owner.  Last, Twitter account activity may provide relevant insight into the Twitter account owner's state of mind as it relates to the offense under investigation.  For example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a criminal plan) or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38.     Therefore, the computers of Twitter are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Twitter, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Twitter to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

40.     Based on the forgoing, I request that the Court issue the proposed search warrant.

41.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

42.     The government will execute this warrant by serving the warrant on Twitter. Because the warrant will be served on Twitter, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

43.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
David Wolf
Special Agent
Federal Bureau of Investigation

15

Received by reliable electronic means and sworn and attested to by
telephone on November 15, 2019.

~~Subscribed and sworn to before me on November xxxxx, 2019.~~

_____

Honorable Joel C. Hoppe

UNITED STATES MAGISTRATE JUDGE

16

3:19mj00060

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Twitter profile with the following one or more identifiers:

1. UID: 1073859727107469312 and/or username @exposefascism31

2. therevolutionrenegade@gmail.com

3. revolutionrenegadephilly@gmail.com

4. revolutionaryabolition.philly@riseup.net

that is stored at premises owned, maintained, controlled, or operated by Twitter, a company headquartered in San Francisco, California.

3:19mj00060

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Twitter**

To the extent that the information described in Attachment A is within the possession, custody, or control of Twitter, including any messages, records, files, logs, or information that have been deleted but are still available to Twitter, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Twitter is required to disclose the following information to the government for each account listed in Attachment A:

a.      All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, gender, hometown, occupation, and other personal identifiers;

b.      All past and current usernames, account passwords, and names associated with the account;

c.      The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.      All IP logs and other documents showing the IP address, date, and time of each login to the account;

e.      All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

f.      All "Tweets" and Direct Messages sent, received, "favorited," or retweeted by the account, and all photographs or images included in those Tweets and Direct Messages;

g.     All information from the "Connect" tab for the account, including all lists of

        Twitter users who have favorited or retweeted Tweets posted by the account, as

        well as a list of all Tweets that include the username associated with the account

        (*i.e.*, "mentions" or "replies");

h.     All photographs and images in the user gallery for the account;

i.     All location data associated with the account, including all information collected

        by the "Tweet With Location" service;

j.     All information about the account's use of Twitter's link service, including all

        longer website links that were shortened by the service, all resulting shortened

        links, and all information about the number of times that a link posted by the

        account was clicked;

k.     All data and information that has been deleted by the user;

l.     A list of all of the people that the user follows on Twitter and all people who are

        following the user (*i.e.*, the user's "following" list and "followers" list);

m.    A list of all users that the account has "unfollowed" or blocked;

n.     All "lists" created by the account;

o.     All information on the "Who to Follow" list for the account;

p.     All privacy and account settings;

q.     All records of Twitter searches performed by the account, including all past

        searches saved by the account;

r.     All information about connections between the account and third-party websites

        and applications;

s.      All records pertaining to communications between Twitter and any person

regarding the user or the user's Twitter account, including contacts with support

services, and all records of actions taken, including suspensions of the account.

Twitter is hereby ordered to disclose the above information to the government within **14 DAYS**

of issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and

instrumentalities of violations of Title 18, Section 2101 involving ███████████ since August 1,

2017 including, for each user ID identified on Attachment A, information pertaining to the

following matters:

a.      Evidence indicating how and when the Twitter account was accessed or used,

to determine the chronological and geographic context of account access, use,

and events relating to the crime under investigation and to the Twitter account

owner;

b.      Evidence indicating the Twitter account owner's state of mind as it relates to

the crime under investigation;

c.      The identity of the person(s) who created or used the user ID, including

records that help reveal the whereabouts of such person(s).

d.      The identity of the person(s) who communicated with the user ID regarding

any and all actions related to ██████ actions in Charlottesville, her reasons

and intent when she traveled to Charlottesville, or prior violent activity,

including records that help reveal their whereabouts.

3

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.